IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **PACIFIC MARITIME ASSOCIATION**, a California Corporation, | Case No.: 3:12-cv-1100-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 8**, an unincorporated labor organization, | |
| Defendants. | |

Jeffrey P. Chicoine, Miller Nash LLP, 3400 U.S. Bancorp Tower, 111 SW Fifth Avenue Portland, Oregon 97204. Of attorneys for Plaintiff.

Robert S. Remar, Eleanor Morton, and Philip Monrad, Leonard Carder, LLP, 1188 Franklin Street, Suite 201, San Francisco, California  94109; Robert Lavitt, Schwerin, Campbell, Barnard, Iglitzin and Lavitt, LLP, 18 West Mercer Street, Suite 400, Seattle, Washington  98119. Of attorneys for Defendants.

**SIMON, District Judge**.

## INTRODUCTION

This lawsuit is one of three related actions arising from a dispute concerning the work of plugging in, unplugging, and monitoring refrigerated shipping containers (the "reefer work") at Terminal 6 at the Port of Portland.[1] The International Warehouse and Longshoremen Union ("ILWU") and the Pacific Maritime Association ("PMA") contend that their collective bargaining agreement—the Pacific Coast Longshore Contract Document ("PCLCD"), discussed below—requires ICTSI Oregon, Inc. ("ICTSI"), the operator of Terminal 6 and a PMA member, to assign the reefer work to ILWU members. ICTSI, the Port of Portland, and the International Brotherhood of Electrical Workers ("IBEW") Local 48 contend that other contracts—including the Terminal 6 Lease Agreement—require that the reefer work be assigned to IBEW members.

Although the ILWU and PMA agree that the reefer work should be assigned to ILWU members, PMA also contends that Defendant ILWU Local 8 ("Local 8") has violated the PCLCD by engaging in work slowdowns and stoppages in an attempt to force ICTSI to assign the reefer work to ILWU members. PMA's suit, brought pursuant to Section 301 of the Labor Management Relations Act, 28 U.S.C. § 185, requests that the Court confirm certain labor arbitration awards finding Local 8 guilty of work stoppages and slowdowns. Presently before the Court are PMA's motions to confirm the arbitration awards (essentially a motion for summary judgment), Dkt. 6, and for a temporary restraining order. Dkt. 13. The Court finds that because the parties are still in the process of arbitrating their dispute, court action is not yet appropriate. PMA's motion to confirm the arbitration award, Dkt. 6, is, therefore, denied without prejudice

---

[1]  The other lawsuits are *Int'l Longshore and Warehouse Union v. ICTSI Oregon, Inc.*, 3:12-cv-01058-SI, and *Hooks v. Int'l Longshore and Warehouse Union*, 3:12-cv-01088-SI.

and with leave to renew at the appropriate time. PMA's motion for a temporary restraining order, Dkt. 13, is denied.

## BACKGROUND

**A.      The Pacific Coast Longshore Contract Document**

On July 1, 2008, PMA and ILWU entered into the Pacific Coast Longshore Contract Document. Dkt. 8-1, Ex. A ("PCLCD"). The PCLCD governs the relationship between PMA, PMA-member ICTSI, and ILWU Local 8 longshoremen employed by ICSTI at the Port of Portland. Marzano Decl. ¶¶ 4, 6. Section 11 of the PCLCD provides that there "shall be no strike, lockout or work stoppage[.]" PCLCD at § 11.1. Section 11 also provides that in "the event grievances or disputes arise on the job, all men and gangs shall continue to work as directed by the employer in accordance with the specific provisions of the Agreement or if the matter is not covered by the Agreement, work shall be continued as directed by the employer." § 11.2.

The PCLCD provides for a multi-step dispute resolution process. This process is "the exclusive remedy with respect to any disputes arising between the" ILWU and its members and PMA and its members. § 17.15. The PCLCD provides that "no other remedies shall be utilized by any person with respect to any dispute involving [the PCLCD] until the grievance procedure has been exhausted." § 17.15.

The PCLCD's multi-step dispute resolution process utilizes escalating layers of review. § 17.2. At the first level, disputes are referred to the local Joint Port Labor Relations Committee ("Port LRC"). §§ 17.11, 17.23. If the Port LRC is unable to reach an agreement, the dispute is referred to one of four Joint Area Labor Relations Committees ("Area LRC").[2] § 17.24. If the Area LRC cannot reach an agreement, the dispute is referred to that Area's Area Arbitrator.

---

[2]   The four areas are Southern California, Northern California, the Columbia River and Oregon Coast Ports, and Washington. § 17.13.

§ 17.25. The Area Arbitrator holds a hearing and issues a decision. *Id.* Area Arbitrator hearings and decisions may be either formal, § 17.5, or informal. § 17.6. The formal decisions of Area Arbitrators, unless they are appealed, are "final and binding upon all parties." § 17.55. Either party may request an informal hearing and decision in response to a claim "that work is not being continued as required by Section 11[.]" § 17.61. Informal, or "interim," decisions are not final, but they are "binding on the parties regarding the particular issue on the particular ship on the particular occasion[.]" § 17.62. If either party is dissatisfied with an interim decision, the dispute may be referred back to the Area Arbitrator for a formal hearing. § 17.63.

The final two levels of review are the Joint Coast Labor Relations Committee ("Coast LRC") followed by the Coast Arbitrator. A single Coast Arbitrator, chosen by the Coast LRC, serves a "term coextensive with the term of the" PCLCD. § 17.512. The PCLCD provides several avenues for a dispute to reach the Coast LRC and Coast Arbitrator. *See* §§ 17.261, 17.2611, 17.262, 17.263. As relevant here, if the local "grievance machinery becomes stalled or fails to work, the matter in dispute can be referred at once by either the Union or [PMA] to the Joint Coast Labor Relations Committee for disposition." § 17.282. If the Coast LRC fails to "agree on any question before it . . . such question shall be immediately referred at the request of either party to the Coast Arbitrator for hearing and decision[.]" § 17.27. The Coast Arbitrator's decision "shall be final and conclusive." *Id.*

**B.     The Hearings and Arbitration Awards**

In June 2012, PMA filed a grievance under the PCLCD to the Port LCR alleging, in part, that ILWU was violating Section 11 of the PCLCD by engaging in work slowdowns. Marzano Decl. ¶ 8. The Port LCR addressed PMA's grievance on June 6, 7, 10, and 11. *Id.* at ¶¶8-11. On each day, the Port LRC was unable to reach agreement and the dispute was referred to the Area

Arbitrator, Jan Holmes. *Id.* Arbitrator Holmes issued a series of informal, interim decisions. Dkt. 17-2, 17-3, 17-4, 17-5. In her first decision, issued on June 6, Arbitrator Holmes found, in part, that ILWU was "not guilty of creating a work stoppage[.]" Dkt. 17-2. On June 7, however, Arbitrator Holmes found that new evidence showed that Local 8 was "guilty of creating a work stoppage at Terminal 6 . . . on June 7 . . . first shift, by failing to provide properly ordered skilled manpower[.]" Dkt. 27-3. Arbitrator Holmes ordered that the "ILWU Local 8 officers and members shall cease engaging in job actions." Dkt. 17-3. Arbitrator Holmes's subsequent decisions, issued on June 10 and 11, also found that Local 8 was engaged in a work slowdown and ordered Local 8 to cease the slowdown. On June 10, Area Arbitrator Holmes found, in part, that Local 8, "its officers and members are engaging in a slowdown, tantamount to a work stoppage, in violation of Sections 11.1 and 11.2, PCLCD." Dkt. 17-4. On June 11, Arbitrator Holmes stated that Local 8 and its officers and members "are guilty of engaging in a slowdown tantamount to a work stoppage on the second shift, June 10, 2012 and continuing on the first shift, June 11, 2012, in violation" of Section 11 of the PCLCD. Dkt. 17-5. Arbitrator Holmes ordered that the "workforce shall return to normal production levels, immediately, and shall maintain normal production levels on all subsequent shifts." *Id.*

After Arbitrator Holmes issued those decisions, both Local 8 and PMA requested additional arbitration. Local 8 requested a formal hearing before the Area Arbitrator to review Arbitrator Holmes's June 11 interim decision. Declaration of Leal Sundet ("Sundet Decl.") ¶ 27 (Dkt. 26); *see also* PCLCD § 17.63. Arbitrator Holmes held a formal hearing on June 29 and a decision is forthcoming. *Id.* at ¶ 30.

PMA requested that the Coast LRC review the dispute. Marzano Decl. at ¶ 12. The Coast LRC could not reach agreement and PMA then referred the dispute to the Coast Arbitrator, John

Kagel. *Id.* PMA moved that Arbitrator Kagel "order ILWU Local 8 to comply with Area

Aribotrator Holmes' local arbitrations ordering ILWU to cease and desist from illegal work

stoppages and any job action at Terminal 6[.]" Dkt. 17-6

Arbitrator Kagel issued award C-04-2012 on June 18, 2012. Dkt. 17-6. In that award,

Arbitrator Kagel granted PMA's motion and confirmed Arbitrator Holmes's interim awards. *Id.*

Arbitrator Kagel also stated that Local 8 "and its members are obligated to follow the [PCLCD]

and its grievance procedure. They are bound by Section 11.31 to do so." *Id.* After Arbitrator

Kagel issued C-04-2012, ILWU filed a motion for reconsideration. Sundet Decl. at ¶ 29. ILWU

argued that C-04-2012 was premature because ILWU had requested a formal hearing on

Arbitrator Holmes's June 11 decision and Arbitrator Holmes had not yet issued her formal

decision in that matter. *Id*. Arbitrator Kagel issued a new award, C-05-2012, on June 20, 2012,

denying ILWU's motion. Dkt. 26, Ex. A. Arbitrator Kagel acknowledged, however, that a formal

hearing before the Area Arbitrator was pending. Nonetheless, he found that "there is no basis to

overturn C-4-[20]12 now." *Id.* He continued by noting that if "and when that decision is

modified or reversed the Union can, through appropriate application of the [PCLCD], then seek

modification of C-4-[20]12 through the [Joint Coast LRC] or, if necessary, by Coast

Arbitration." Sundet Decl. Ex. A.

## STANDARDS

PMA styles its motion a "Motion to Confirm and Enforce Arbitration Awards." Dkt. 6.

Because PMA's motion asks the Court for the same relief sought in its complaint, the Court

construes PMA's motion as a motion for summary judgment. A party is entitled to summary

judgment if the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for

summary judgment, the Court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in the nonmovant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... ruling on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Summary judgment is not appropriate if a reasonable jury viewing the summary judgment record could find by a preponderance of the evidence that the plaintiff is entitled to a verdict in his favor." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

A plaintiff seeking a temporary restraining order must show: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

## DISCUSSION

### A.    PMA's Motion to Confirm and Enforce Arbitration Awards

PMA's first motion is for an order "confirming and enforcing labor arbitration awards issued under the parties' collective bargaining agreement." Dkt. 6. PMA's proposed form of order shows that, in particular, PMA seeks a court order confirming the Coast Arbitrator's June 18 decision, C-04-2012. In response, Local 8 contends that PMA's motion is "premature because the grievance process under the collective bargaining agreements has not been exhausted." Dkt. 25.

Section 301 of the LMRA provides that suits "for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United

States[.]" 29 U.S.C. § 185(a). Section 301 grants the court authority to enforce "final and binding" arbitration awards. *Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963) (per curiam) (if "the award . . . is under the collective bargaining agreement final and binding, the District Court has jurisdiction under § 301 to enforce it"). "In general, a district court should only confirm a final and binding arbitration award." *Sheet Metal Workers' Int'l Ass'n, Local 206 v. R.K. Burner Sheet Metal Inc.*, 859 F.2d 758, 760 (9th Cir. 1988).

The requirement that the court only enforce arbitration awards that are final and binding is premised on judicial deference to the arbitration process. "To allow judicial intervention prior to the final award would contravene the fundamental federal labor policy of deference to contractual dispute resolution procedures, and would interfere with the purpose of arbitration: the speedy resolution of grievances without the time and expense of court proceedings." *Millmen Local 550 v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir. 1987). Accordingly, to "be considered final, an arbitration award must be intended by the arbitrator to be a complete determination of every issue submitted." *Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 724 (9th Cir. 1991) (internal quotation marks and citations omitted). "An arbitrator's ruling is not final if there is a substantive task left for the arbitrator to perform in the proceeding, even if not all of the parties agree that such further action is warranted." *Id.* at 725.

PMA argues that the Court may confirm C-04-2012 because it is final and binding. PMA is correct that C-04-2012 is, according to the PCLCD, a final decision. C-04-2012 is not, however, "a complete determination of every issue submitted" for arbitration. As noted above, ILWU appealed the Area Arbitrator's June 11, 2012, interim decision and a formal hearing was held on June 29, 2012. A decision has not yet been issued. The Coast Arbitrator's June 20, 2012

decision, C-05-2012, makes plain that the Coast Arbitrator may modify or even overturn C-04-2012 based on the outcome of the Area Arbitrator's formal hearing. C-05-2012 states that "there is no basis to overturn [C-04-2012] *now*." (Emphasis added.) It also provides that, given that the Area Arbitrator's decision in the formal hearing is still pending, there is no need to alter the findings in C-04-2012 "in the interim." Finally, C-05-2012 notes that if "and when any of" the Area Arbitrator's decisions "are modified or reversed the Union can . . . then seek modification of" C-04-2012. This language demonstrates that the Coast Arbitrator contemplates the possibility of overturning or modifying C-04-2012, or, potentially, issuing new awards addressing the same facts considered in C-04-2012. Accordingly, there are still "substantive task[s] left for the arbitrator to perform." *See Orion Pictures Corp.*, 946 F.2d at 725. Judicial interference in the arbitration process, therefore, is not appropriate at this time. When the parties have exhausted the arbitration process, PMA may re-file its motion.

**B.      PMA's Motion for a Temporary Restraining Order**

PMA has also filed a motion for a temporary restraining order, seeking essentially the same relief sought in its motion for confirmation of the arbitration awards: An order stating that "Local 8 shall immediately comply with Coast Arbitration Award C-04-[20]12." Dkt. 28. Section 301 grants the Court the authority to enforce a final and binding arbitration decision by issuing an injunction. *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 711 n.10 (1982). Section 301 does not, however, permit the Court to issue preliminary injunctive relief, including temporary injunctive relief, pending the final decision of the arbitrator. The parties' agreement to arbitrate "their differences themselves would be eviscerated if the courts for all practical purposes were to try and decide contractual disputes at the preliminary injunction stage." *Buffalo Forge Co. v. United Steelworkers of Am., AFL-CIO.*, 428

U.S. 397, 412 (1976) (holding that district court was not empowered to grant preliminary injunctive relief pending arbitration decision).[3] Where, as here, the collective bargaining agreement contains a mandatory arbitration clause, "it reflects the parties' desire to arbitrate, not to litigate, grievances." *Drivers, Chauffeurs, Warehousemen & Helpers Teamsters Local Union No. 71 v. Akers Motor Lines, Inc.*, 582 F.2d 1336, 1342 (4th Cir. 1978). Accordingly, PMA's motion for a temporary restraining order is denied.[4]

---

[3] In *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235 (1970), the Supreme Court recognized a narrow exception to the general rule that courts may not issue preliminary injunctive relief where a collective bargaining agreement requires arbitration. In that case, the union struck instead of filing a grievance under the collective bargaining agreement's arbitration provisions. A district court issued an order enjoining the strike and compelling arbitration. The Supreme Court found that where a collective bargaining agreement provides for arbitration of the parties' dispute and contains a no-strike clause, a preliminary injunction enjoining a strike could issue when the union was striking instead of arbitrating an arbitable grievance. *See id.* at 254; *see also Niagara Hooker Employees Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1376 (2d Cir. 1991) (discussing *Boys Market*). Unlike the union in *Boys Market*, Local 8 is participating in the arbitration process.

[4] In addition, the court notes that given the preliminary injunction issued on July 19, 2012, in *Hooks v. Int'l Longshore and Warehouse Union*, 3:12-cv-01088-SI, which enjoins Local 8 from engaging in work stoppages and slowdowns, the Court has already ordered substantially the same relief that PMA seeks here. Even if the Court had authority to issue a temporary restraining order in this case, the existence of the preliminary injunction issued in *Hooks* would factor into the Court's analysis of the irreparable harm prong of the temporary injunction standard. PMA would face difficulty establishing that it would suffer irreparable harm in the absence of a temporary restraining order when another injunction already prohibits the same allegedly injurious conduct.

## CONCLUSION

PMA's motion to confirm and enforce arbitration awards, Dkt. 6, is **DENIED** without

prejudice and with leave to renew. PMA's motion for a temporary restraining order, Dkt. 13, is

**DENIED**.

IT IS SO ORDERED.

Dated this 20th day of July, 2012.

/s/ Michael H. Simon
_____
Michael H. Simon
United States District Judge